**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MATTHEW KOVALESKI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZSPACE, INC., PAUL KELLENBERGER, ERICK DEOLIVEIRA, PANKAJ GUPTA, AMIT JAIN, ROTH CAPITAL PARTNERS, LLC, NORTHLAND SECURITIES, INC., and BARRINGTON RESEARCH ASSOCIATES, INC.,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Matthew Kovaleski ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by zSpace, Inc. ("zSpace" or the "Company"), as well as media and analyst reports about

1

the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1.    Plaintiff brings this securities class action on behalf of all persons and entities who purchased or otherwise acquired zSpace securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with zSpace's December 2024 initial public offering (the "IPO" or "Offering") and suffered compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2.    In December 2024, Defendants held the IPO, offering approximately 1,875,000 shares of common stock to the investing public at $5.00 per share. zSpace raised $9,375,000 in the IPO, excluding underwriting discounts and commissions and expenses.

3.    By the commencement of this action, zSpace's shares traded below its IPO price. As a result, investors were damaged.

## JURISDICTION AND VENUE

4.    The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District.

2

7. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of zSpace securities in this District.

**PARTIES**

8. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities pursuant and/or traceable to the IPO and was damaged thereby.

9. Defendant zSpace purports to be a leading provider of augmented reality (AR) and virtual reality (VR) educational technology solutions. The Company is incorporated in Delaware and its head office is located at 2050 Gateway Place, Suite 100-302, San Jose, CA, 95110. zSpace securities trade on the NASDAQ Exchange ("NASDAQ") under the ticker symbol "ZSPC."

10. Defendant Paul Kellenberger ("Kellenberger") was at the time of the IPO the Company's Chief Executive Officer ("CEO") and a Director and signed or authorized the signing of the Company's Registration Statement.

11. Defendant Erick DeOliveira ("DeOliveira") was at the time of the IPO the Company's Chief Financial Officer ("CFO") and signed or authorized the signing of the Company's Registration Statement.

12. Defendant Pankaj Gupta ("Gupta") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

3

13. Defendant Amit Jain ("Jain") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

14. The Defendants named in ¶¶ 10-13 are sometimes referred to herein as the "Individual Defendants."

15. Each of the Individual Defendants signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and promotions to meet with and present favorable information to potential zSpace investors, all motivated by their own and the Company's financial interests.

16. Defendant Roth Capital Partners, LLC ("Roth Capital") is an investment banking firm that acted as a representative underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Roth Capital's address is 888 San Clemente Drive, Suite 400, Newport Beach, CA 92660.

17. Defendant Northland Securities, Inc. ("Northland") is a brokerage and investment firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Northland's address is 150 S 5th St., Ste. 3300, Minneapolis, MN 55402.

18. Defendant Barrington Research Associates, Inc. ("Barrington") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Barrington's address is 161 N. Clark St., Ste. 2950, Chicago, IL 60601.

19. The Defendants named in ¶¶ 16-18 are sometimes referred to herein as the as the "Underwriter Defendants."

4

20.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a roadshow prior to the IPO during which they, and representatives from zSpace, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)     The Underwriter Defendants also demanded and obtained an agreement from zSpace and the Individual Defendants that zSpace would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)     Representatives of the Underwriter Defendants also assisted zSpace and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of zSpace, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

(d)     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with zSpace's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of

5

the IPO, including the price at which zSpace securities would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about zSpace would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and zSpace's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, zSpace's existing problems as detailed herein.

(e)    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

21.    zSpace, the Individual Defendants, and the Underwriter Defendants are referred to collectively as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading Statements

22.    On or about June 24, 2024, zSpace filed with the SEC a Registration Statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), would be used for the IPO.

23.    On December 6, 2024, zSpace filed with the SEC its final prospectus for the IPO on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement. In the IPO, zSpace sold approximately 1,875,000 common stock shares at $5.00 per share, raising $9,375,000 before underwriting discounts and commissions and expenses.

24.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and

6

regulations governing its preparation.

25.     The Registration Statement included a section titled "Principal Stockholders" which purported to set forth all persons and entities known to zSpace to be the beneficial owner of more than 5% of the outstanding shares of zSpace's voting shares on an actual, pro forma, and pro forma as adjusted basis. The Registration Statement provided the following table of all such beneficial owners:

| | Prior to this Offering | | | | | | | | | | Pro Forma[1] | | Pro Forma as adjusted[2] | |
| | Common Stock | | Series A Preferred Stock | | NCNV 1 Preferred Stock | | NCNV 2 Preferred Stock | | NCNV 3 Preferred Stock | | Common Stock | | Common Stock | |
| Name of Beneficial Owner | No. of Shares | % | No. of Shares | % | No. of Shares | % | No. of Shares | % | No. of Shares | % | No. of Shares | % | No. of Shares | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Named Executive Officers and Directors** | | | | | | | | | | | | | | |
| Paul Kellenberger[3] | 2,303,933 | 93.0 | — | — | — | — | — | — | — | — | 2,303,933 | 10.0 | 2,303,933 | 9.3 |
| *Chief Executive Officer and Director* | | | | | | | | | | | | | | |
| Erick DeOliveira | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| *Chief Financial Officer* | | | | | | | | | | | | | | |
| Michael Harper[4] | 518,577 | 74.9 | — | — | — | — | — | — | — | — | 518,577 | 2.4 | 518,577 | 2.2 |
| *Chief Product, Engineering and Marketing Officer* | | | | | | | | | | | | | | |
| Ronald Rheinheimer[5] | 373,124 | 68.2 | — | — | — | — | — | — | — | — | 373,124 | 1.8 | 373,124 | 1.6 |
| *Chief Sales Officer* | | | | | | | | | | | | | | |
| Pankaj Gupta[6] | — | — | 3,874,946 | 100.0 | 47,250 | 86.3 | — | — | 2,750 | 5.7 | 11,580,670 | 56.0 | 11,580,670 | 51.3 |
| *Director* | | | | | | | | | | | | | | |
| Amit Jain | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| *Director* | | | | | | | | | | | | | | |
| **Executive Officers and Directors as a Group (6 persons)** | 3,195,634 | 94.8 | — | — | — | — | — | — | — | — | 14,776,304 | 61.9 | 14,776,304 | 57.4 |
| **Other 5% Beneficial Owners:** | | | | | | | | | | | | | | |
| bSpace Investments Limited[7] | — | — | — | — | — | — | — | — | 45,890 | 94.3 | 5,506,800 | 26.6 | 5,506,800 | 24.4 |
| dSpace Investments Limited[8] | — | — | 3,874,946 | 100.0 | 47,250 | 86.3 | — | — | 2,750 | 5.7 | 11,580,670 | 56.0 | 11,580,670 | 51.3 |
| Kuwait Investment Authority[9] | 11,257 | 6.5 | — | — | 7,500 | 13.7 | 5,752 | 100.0 | — | — | 1,590,240 | 7.7 | 1,590,240 | 7.0 |
| Fiza Investments Limited[10] | — | — | — | — | — | — | — | — | — | — | 1,176,471 | 5.7 | 1,176,471 | 5.2 |
| Joseph Powers[11] | 501,531 | 74.2 | — | — | — | — | — | — | — | — | 501,531 | 2.4 | 501,531 | 2.2 |

26.     The statement referenced in ¶25 above was materially false and/or misleading because it misrepresented and failed to disclose adverse facts pertaining to the Company's business, operational and financial results. Specifically, the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) there was a purchaser of Series E and Series F preferred stock that was not included in this table; and (2) as a result, Defendants' Registration Statement was materially false and misleading at all relevant times and negligently prepared.

27.     The Registration Statement also included in its Risk Factors section the

following warning about lawsuits:

> "*We could be involved in legal disputes that are expensive and time consuming, and, if resolved adversely, could harm our business, operating results and financial condition.*
>
> From time to time, <u>*we may be involved in actual and threatened legal proceedings,*</u> claims, investigations and government inquiries arising in the ordinary course of our business, including intellectual property, data privacy, cybersecurity, privacy and other torts, illegal or objectionable content, contractual rights, false or misleading advertising, or other legal claims relating to content or information that is provided to us or published or made available on our platform. Any proceedings, claims or inquiries involving our company, whether successful or not, may be time consuming, result in costly litigation, unfavorable outcomes or increased costs of business, require us to change our business practices or platform, require significant amount of management's time or may harm our reputation or otherwise harm our business, operating results, and financial condition.
>
> We are currently involved in litigation to protect our patents, trademarks, copyrights and other intellectual property rights, and may be subject to intellectual property litigation and threats thereof in the future. Specifically, a number of competitors based in China have created clones of our original all-in-one product. To prevent substantial unauthorized use of our intellectual property rights, it may be necessary to prosecute actions for infringement and/or misappropriation of our proprietary rights against third parties. Any such action could result in significant costs and diversion of our resources and management's attention, and we cannot assure that we will be successful in such action. Companies in the Internet, technology and education industries typically own large numbers of patents, copyrights, trademarks and trade secrets and frequently enter into litigation based on allegations of infringement or other violations of intellectual property rights. As we face increasing competition and grow our business and platform offerings, the possibility of receiving a larger number of intellectual property claims against us grows. In addition, various "non-practicing entities" that own patents and other intellectual property rights may in the future attempt to assert intellectual property claims against us to extract value through licensing or other settlements.
>
> From time to time, we receive letters from patent holders alleging that our platform infringes on their patent rights and from trademark holders alleging infringement of their trademark rights. We also receive letters from holders of copyrighted content alleging infringement of their intellectual property rights. Our technologies and content, including the content that partners may create for use on our platform, may not be able to withstand such third-party claims, and could have a material adverse effect on our business.
>
> With respect to any intellectual property claims, we may have to seek a license to

8

continue using technologies or engaging in practices found to be in violation of a third-party's rights, which may not be available on reasonable terms and may significantly increase our operating expenses (for example, by being required to pay significant royalties in connection with such licenses). A license to continue using such technologies or practices may not be available to us at all and we may be required to discontinue use of such technologies or practices or to develop alternative non-infringing technologies or practices. The development of alternative non-infringing technologies or practices could require significant effort and expense or may not be achievable at all. Our business, operating results and financial condition could be harmed as a result. If we cannot license or develop alternative non-infringing substitutes for any infringing technology used in any aspect of our business, we would be forced to limit use of our platform. Any of these results would adversely affect our business, operating results and financial condition."

(Underlined emphasis added).

28.     The statement referenced in ¶27 above was materially false and/or misleading because it misrepresented and/or failed to disclose adverse facts pertaining to the Company's business, operational and financial results. Specifically, the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) before zSpace even filed its form S-1, a certain purchaser of Series E and Series F preferred stock emailed, *inter alia*, Defendant DeOliveira concerning financial statements that Defendants owed to the shareholder pursuant to the preferred stock purchase agreement; (2) there was a purchaser of zSpace's preferred shares who was not named in the Registration Statement; (3) Defendants' failure to fulfill their obligations to their preferred shareholder would result in litigation; and (4) as a result, Defendants' risk disclosures were materially false and misleading at all relevant times by downplaying the risk of litigation as a hypothetical at the time of the IPO.

29.     On March 11, 2026, the above-mentioned purchaser of zSpace's Series E and Series F preferred stock, Jiangxi Kmax Industrial Co., Ltd. ("Kmax"), filed a lawsuit against, *inter alia*, Defendants zSpace, Kellenberger, and DeOliveira (the "Kmax Lawsuit"). The Kmax Lawsuit was filed in the Southern District of New York, captioned *JIANGXI KMAX*

*INDUSTRIAL CO., LTD., v. ZSPACE, INC., PAUL KELLENBERGER, ERICK DEOLIVEIRA, JOSEPH B. POWERS, and DAVID LORIE*, Case No. 1:26-cv-02023-JAV (S.D.N.Y.).

30.     The Kmax Lawsuit alleged, *inter alia*, that Kmax purchased substantial amounts of zSpace's Series E and Series F preferred stock, but that the shares actually delivered did not reflect the purchase agreement. Specifically, the Kmax Lawsuit alleged that, on or about July 7, 2017, Kmax executed zSpace's Series E Preferred Stock Purchase Agreement at a price of $0.90 per share.  On or about September 26, 2017, Kmax wired $5,000,000 to zSpace, corresponding to approximately 5,555,555 Series E preferred shares. The Kmax Lawsuit further alleged that, in May 2019, Kmax executed the Series F Preferred Stock Purchase Agreement to purchase 8,155,941 shares of zSpace's Series F preferred stock for a purchase price of $9,999,999.27, and that Kmax wired $10,000,000 to zSpace on May 8, 2019.

31.     The Kmax Lawsuit alleged that on May 14th, 2024, Kmax's management team emailed, *inter alia*, Defendant DeOliveira concerning certain financial statements that zSpace was obligated to provide to Kmax pursuant to Kmax's purchases of zSpace preferred stock. The Kmax Lawsuit further alleges that zSpace repeatedly failed to provide the requested financial statements.

32.     Additionally, the Kmax Lawsuit alleged that on January 21, 2025, zSpace sent Kmax a welcome letter containing, *inter alia*, an equity statement that purported to show Kmax's equity ownership. The Kmax Lawsuit alleged that the equity ownership showed that Kmax only owned 4,569 shares of zSpace common stock – a far cry from the more than 13 million preferred shares that Kmax had purchased.

33.     The Kmax Lawsuit revealed the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) Kmax had purchased over 13 million

10

preferred shares; (2) zSpace did not disclose this fact in its Registration Statement, despite purporting to disclose all owners of zSpace's preferred stock; (3) the risk of litigation was not a mere hypothetical, but a real possibility; and (4) as a result, Defendants' Registration Statement contained materially false and misleading information at all relevant times and was negligently prepared.

34. On April 21, 2026, zSpace carried out a 1-for-25 reverse stock split.

35. At the time this complaint was filed, zSpace's share price plummeted from its IPO price to as low as $0.0208 per share, not accounting for the 1-for-25 reverse stock split.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action on behalf of all persons and entities who purchased or otherwise acquired zSpace securities pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by zSpace or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the federal securities laws;

b)      whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Violations of Section 11 of the Securities Act Against All Defendants

42.     Plaintiff incorporates all the foregoing by reference.

43. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

44. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

45. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

46. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

47. By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

48. Plaintiff acquired zSpace securities pursuant to the Registration Statement.

49. At the time of their purchases of zSpace securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

50. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II
### Violations of Section 12(a)(2) of the Securities Act Against All Defendants

51. Plaintiff incorporates all the foregoing by reference.

13

52.     By means of the defective Prospectus, Defendants promoted, solicited, and sold the Company's securities to Plaintiff and other members of the Class.

53.     The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased zSpace securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

54.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired zSpace securities.

55.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased zSpace securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the securities. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their securities, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

56.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the

exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III
### Violations of Section 15 of the Securities Act Against the Individual Defendants

57.    Plaintiff incorporates all the foregoing by reference.

58.    This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

59.     The Individual Defendants were controlling persons of zSpace by virtue of their positions as directors or senior officers of zSpace. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of zSpace. The Company controlled the Individual Defendants and all of zSpace's employees.

60.    zSpace and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

61.    This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

15

A.      declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.      awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

C.      awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 23, 2026                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/ Phillip Kim*
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*